976 So.2d 600 (2007)
S.D.S. AUTOS, INC., a Florida Corporation, d/b/a Lexus of Jacksonville, Appellant,
v.
Francis A. CHRZANOWSKI, Kimberly M. Chrzanowski, Alfred G. Jonas, Harold Gregory Forrest and Rita B. Forrest, both individually and on behalf of all others similarly situated, Appellees,
Brumos Motor Cars, Inc., a Florida Corporation, Appellant,
v.
Carolyn C. Montgomery, Cleophus M. Howell, Alfred G. Jonas and Heidi H. Jonas, both individually and on behalf of all others similarly situated, Appellees.
Nos. 1D06-4293, 1D06-4294.
District Court of Appeal of Florida, First District.
November 26, 2007.
Rehearing Denied March 19, 2008.
*602 Christopher J. Greene and Gregory Williamson of Brant, Abraham, Reiter, McCormick & Greene, P.A., Jacksonville, for Appellant.
J. Michael Lindell and Roger K. Gannam of Lindell, Farson & Pincket, P.A., Jacksonville, and Bryan S. Gowdy and John S. Mills of Mills & Creed, P.A., Jacksonville, for Appellees.
BENTON, J.
Appellants Brumos Motor Cars, Inc., a Mercedes dealership (Brumos), and S.D.S. Autos, Inc., a Lexus dealership (S.D.S.), seek relief from non-final orders[1] denying their motions to dismiss amended class action complaints filed under Florida's Deceptive and Unfair Trade Practices Act (FDUTPA or the Act), section 501.201 et seq., Florida Statutes (2005). The trial court construed their motions to dismiss as in part motions to compel arbitration. To the extent Brumos and S.D.S. sought dismissal on the ground that automobile lessees were contractually obligated to pursue their claims (on an individual basis) in arbitration, we have jurisdiction to review the orders. See Fla. R.App. P. 9.130(a)(3)(C)(iv)(2007) (allowing appeals of non-final orders that determine "the entitlement of a party to arbitration").

*603 I.
Appellees' amended class action complaints allege that Brumos and S.D.S. charged each named plaintiff $379.70 (the fee) as either an "administrative and documentary fee" or as "administrative and state fees" in connection with each vehicle the appellees acquired. The complaints allege that Brumos and S.D.S. violated FDUTPA by failing to disclose the true nature of the fee as required by sections 501.976(11) and 501.976(18), Florida Statutes (2005), and seek, among other things, injunctive relief and money damages under FDUTPA.[2] The appellees also sought certification of a class consisting of all those who paid the fee[3] "in connection with the purchase or lease of a motor vehicle."
Brumos and S.D.S. moved to dismiss the amended complaints in part on the ground that putative class members who had leased[4] vehicles from them had signed leases containing arbitration provisions. Brumos and S.D.S. argued the lessees could proceed no further in court, once Brumos and S.D.S. demanded arbitration. While the motions to dismiss were pending, the appellees moved for leave to file their second amended class action complaints,[5] adding as named plaintiffs two couples who had leased vehicles from Brumos and S.D.S. under agreements containing arbitration provisions. In July of 2006, the trial court denied the motions to dismiss, and timely appeals ensued. The trial court certified a class[6] only after it denied the motions to dismiss, and after the present appeals had been taken. In the orders under review, the trial court ruled the arbitration provisions of various leases unenforceable, on grounds they were unconscionable, contrary to Florida's public policy, and unsupported by mutual assent and consideration.

II.
We address the validity of only two arbitration provisions, the arbitration provisions in the leases which the plaintiffs named in the second amended complaint signed.[7] Both these leases (the Lexus 2 *604 and Brumos 2 agreements) provide for binding arbitration of all disputes concerning the lease or any related transaction, at the election of either party to the agreement. Both arbitration provisions also contain express class action waivers. The Lexus 2 agreement provides that "[a] claim can only be arbitrated on an individual basis and not as a class action." This agreement further provides that "[t]here shall be no right to arbitrate a claim as a representative of others or in a private attorney general capacity and there shall be no joinder or consolidation of parties, except for parties to the same contract." The Brumos 2 agreement provides that leasing customers "give up any right [they] may have to bring a class-action lawsuit or class arbitration, or to participate in either as a claimant, and . . . agree to give up any right [they] may have to consolidate [their] arbitration with the arbitration of others."[8] We conclude that, under our precedent, the class action waivers in the two leases we have to consider violate public policy by hampering important remedial purposes of FDUTPA, because they are designed to prevent individuals with small claims arising out of a motor vehicle dealer's alleged violation of section 501.976, Florida Statutes (2005), from seeking remedies as a class. On that ground, we affirm the orders below (to the extent they deny Brumos and S.D.S. arbitration of claims arising out of the Lexus 2 and Brumos 2 agreements).[9]

III.
The validity of an arbitration provision is a purely legal question a reviewing court considers de novo. See Gainesville Health Care Ctr., Inc. v. Weston, 857 So.2d 278, 283 (Fla. 1st DCA 2003); Brasington v. EMC Corp., 855 So.2d 1212, 1215 (Fla. 1st DCA 2003); see also Stewart Agency, Inc. v. Robinson, 855 So.2d 726, 728 (Fla. 4th DCA 2003). The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, applies here because the lease agreements "evidenc[e] a transaction involving commerce" within the meaning of the FAA. See 9 U.S.C. § 2 (2006). Both agreements expressly provide, moreover, that the FAA applies.[10]See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 273-77, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (construing the words "involving commerce" to include any *605 contract "affecting commerce" and to signal Congress' "intent to exercise [its] commerce power to the full"); E. Funding, L.L.C. v. Roman, 882 So.2d 1059, 1060 (Fla. 4th DCA 2004). See also United States v. McCoy, 323 F.3d 1114, 1129 (9th Cir.2003) (observing that "[t]he automobile, if anything, is the paradigm of modern interstate commercial activity"); id. ("[C]ars are themselves instrumentalities of commerce, which Congress may protect.") (quoting United States v. Oliver, 60 F.3d 547, 550 (9th Cir.1995)). No party objects to application of the federal act here, nor do we find any requirement in the Florida Arbitration Code, §§ 682.01-682.22, Florida Statutes (2005), that the FAA does not also impose in these circumstances.
Pursuant to the FAA, any "written [arbitration] provision in . . . a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2006). The Supreme Court has held that section two of the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Perry v. Thomas, 482 U.S. 483, 489, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)); see also Regency Group, Inc. v. McDaniels, 647 So.2d 192, 193 (Fla. 1st DCA 1994) (noting that "[p]ublic policy . . . favors arbitration because it is efficient and avoids the time delay and expense associated with litigation" and that "doubts about the scope of [an arbitration] agreement should be resolved in favor of arbitration"). Except for reasons requiring "the revocation of any contract," the States cannot require litigants who have agreed to arbitrate to resort to a judicial forum, without contravening the "clear federal policy," Perry, 482 U.S. at 491, 107 S.Ct. 2520, that arbitration agreements be "rigorously enforce[d]." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). See Perry, 482 U.S. at 489-91, 107 S.Ct. 2520 (holding California statute requiring that wage collection proceedings take place in court, notwithstanding a private agreement to arbitrate, was preempted by the FAA under the Supremacy Clause).

IV.
State law may, however, invalidate an arbitration provision without contravening the FAA "provided the law at issue governs contracts generally and not arbitration agreements specifically." Bess v. Check Express, 294 F.3d 1298, 1306 (11th Cir.2002) (citing Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)). Although the FAA preempts any state law that singles out arbitration provisions for special scrutiny, defenses to contract enforcement generally applicable under state law, "including voidness for violation of the law or public policy, unconscionability, or lack of consideration," may render contractual provisions on any subject (including those purporting to prohibit class consideration of claims) invalid without offending the FAA. See Global Travel Mktg., Inc. v. Shea, 908 So.2d 392, 397-98 (Fla.2005).
The FAA requires arbitration of a statutory cause of action only so long as arbitration does not impair a statute's remedial function or render it ineffective as a deterrent. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ("[S]o long as the prospective litigant *606 effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function."); see also Powertel, Inc. v. Bexley, 743 So.2d 570, 576 (Fla. 1st DCA 1999) ("The arbitrability of a statutory claim rests on the assumption that the arbitration agreement permits relief equivalent to that which is available in the courts."); Romano ex rel. Romano v. Manor Care, Inc., 861 So.2d 59, 62 (Fla. 4th DCA 2003) ("Although parties may agree to arbitrate statutory claims, even ones involving important social policies, arbitration must provide the prospective litigant with an effective way to vindicate his or her statutory cause of action in the arbitral forum.").
We have held that an arbitration agreement that "defeat[s] the remedial purpose of the statute upon which an action is based," Powertel, 743 So.2d at 576, or "deprive[s] the plaintiff of the ability to obtain meaningful relief for alleged statutory violations," Alterra Healthcare Corp. v. Estate of Linton ex rel. Graham, 953 So.2d 574, 578 (Fla. 1st DCA 2007), is unenforceable for public policy reasons. See, e.g., Alterra, 953 So.2d at 578 (holding arbitration agreement void for public policy reasons because it defeated the remedial purpose of the Nursing Home Residents Act by expressly limiting liability); Blankfeld v. Richmond Health Care, Inc., 902 So.2d 296, 298 (Fla. 4th DCA 2005) (same); Am. Online, Inc. v. Pasieka, 870 So.2d 170, 172 (Fla. 1st DCA 2004) (refusing to enforce forum selection clause because "the purpose and effectiveness of the FDUTPA would be seriously undermined if the claims here were required to be brought in Virginia"). We now hold that a contractual provision precluding class relief for small but numerous claims against motor vehicle dealers under section 501.976, Florida Statutes (2005), impermissibly frustrates the remedial purposes of FDUTPA.

V.
Although prevailing parties in FDUTPA actions may recover attorney's fees and costs,[11] an individual asserting a successful FDUTPA claim arising out of a motor vehicle dealer's violation of section 501.976, Florida Statutes (2005), may recover only such attorney's fees as are reasonable in light of the amount of the individual's actual damages. See § 501.976, Fla. Stat. (2005) ("In any civil litigation resulting from a violation of this section, when evaluating the reasonableness of an award of attorney's fees to a private person, the trial court shall consider the amount of actual damages in relation to the time spent.").
Yet FDUTPA's attorney's fee provisions are intended to ensure the efficacy of the Act's private enforcement scheme, not to doom it to failure. See LaFerney v. Scott Smith Oldsmobile, Inc., 410 So.2d 534, 536 (Fla. 5th DCA 1982) ("If, because of the small sums involved, consumers cannot recover in full their attorney fees, they will quickly determine it is too costly and too great a hassle to file suit, and individual enforcement of [FDUTPA] will fail."); Marshall v. W & L Enters. Corp., 360 So.2d 1147, 1148 (Fla. 1st DCA 1978) (noting importance of attorney's fees provision in ensuring that FDUTPA's "obvious purpose of . . . mak[ing] consumers whole for losses caused by fraudulent consumer practices" is served), disapproved on other *607 grounds in Hubbel v. Aetna Cas. & Surety Co., 758 So.2d 94, 97 (Fla.2000); see also Fonte v. AT & T Wireless Servs., Inc., 903 So.2d 1019, 1024 (Fla. 4th DCA 2005) (invaliding arbitration clause provision precluding attorney's fees award on ground that bar on award "defeats a remedial purpose of FDUTPA"). Where, as in the present case, the amount of an individual consumer's actual damages is small and attorney's fees are limited as a result, FDUTPA's private enforcement scheme cannot effectively deter violations of section 501.976, Florida Statutes (2005), if consumers are prevented from seeking relief as a class. The class action device was designed to provide a procedure for vindicating just these types of claims. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) ("[T]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir.1997)).
Courts have not invalidated every arbitration provision precluding consumers from seeking class-wide vindication of every statutory claim.[12] But our own precedent requires nothing less in the case of numerous, small claims brought against motor vehicle dealers under section 501.976, Florida Statutes (2005). See Am. Online, 870 So.2d at 171-72; Powertel, 743 So.2d at 576-77. The Legislature enacted FDUTPA "to protect not only the rights of litigants, but also the rights of the consuming public at large." Davis v. Powertel, Inc., 776 So.2d 971, 975 (Fla. 1st DCA 2000) (observing that the Act authorizes declaratory and injunctive relief "even if those remedies might not benefit the individual consumers who filed the suit").
In America Online, we held unenforceable a forum selection clause which would have required suit under FDUTPA to be brought in Virginia, where class action relief was unavailable. 870 So.2d at 171-72. Noting that "FDUTPA does not exist solely for the benefit of the individual parties, and is instead designed to afford a broader protection to the citizens of Florida," we held that "the purpose and effectiveness of the FDUTPA would be seriously undermined if the claims . . . were required to be brought in Virginia." Id. In reaching its decision, the America Online court distinguished SAI Insurance Agency, Inc. v. Applied Systems, Inc., 858 So.2d 401 (Fla. 1st DCA 2003), which gave effect to a forum selection clause requiring suit in another state where consumers raised claims under FDUTPA, on grounds that "SAI did not involve a class action, or the unavailability of the Florida remedy in another state." Am. Online, 870 So.2d at 171.
*608 In finding the arbitration provision in Powertel substantively unconscionable,[13] we relied in part on the fact that the "[t]he arbitration clause . . . effectively removes Powertel's exposure to any remedy that could be pursued on behalf of a class of consumers" and noted that the benefit of class relief preclusion inured asymmetrically to Powertel, not to its customers. Id. at 576. The Powertel court explained that
[c]lass litigation provides the most economically feasible remedy for the kind of claim that has been asserted here. The potential claims are too small to litigate individually, but collectively they might amount to a large sum of money. The prospect of class litigation ordinarily has some deterrent effect on a manufacturer or service provider, but that is absent here. By requiring arbitration of all claims, Powertel has precluded the possibility that a group of its customers might join together to seek relief that would be impractical for any of them to obtain alone.
Id.[14] The fee at issue in these cases has also given rise to small claims that are impractical for consumers to litigate or arbitrate on an individual basis but which allegedly involve "a large sum of money" when considered collectively.

VI.
Disallowing class relief effectively prevents consumers with small, individual claims based upon motor vehicle dealers' violations of section 501.976, Florida Statutes (2005), from vindicating their statutory rights under FDUTPA. See, e.g., Kristian v. Comcast Corp., 446 F.3d 25, 54 (1st Cir.2006) (finding that "bar on class arbitration threatens the premise that arbitration can be a fair and adequate mechanism for enforcing statutory rights") (internal quotations omitted); Scott v. Cingular Wireless, 160 Wash.2d 843, 161 P.3d 1000, 1005 (2007) (noting that "when consumer claims are small but numerous, a class-based remedy is the only effective method to vindicate the public's rights").
Precluding class representation for holders of small claims whose attorney's fees are limited by the amount of their individual damages dramatically undermines FDUTPA's private enforcement mechanisms.[15]Cf. Kristian, 446 F.3d at 54 (finding *609 class waiver inapplicable to claims under the federal and state antitrust statutes notwithstanding fact that neither statute expressly confers any right to seek class relief). See also Dix v. ICT Group, Inc., 160 Wash.2d 826, 161 P.3d 1016, 1023 (2007) (finding public policy embodied in Washington's Consumer Protection Act (CPA) "violated when a citizen's ability to assert a private right of action is significantly impaired by a forum selection clause that precludes class actions in circumstances where it is otherwise economically unfeasible for individual consumers to bring their small-value claims" even though the CPA contained no class action antiwaiver provision). But see Fonte, 903 So.2d at 1024-25 (Fla. 4th DCA 2005) (finding arbitration clause's preclusion of class relief in a case where section 501.976 had no application does not defeat FDUTPA's remedial purposes, in part because "neither the text nor our review of the legislative history of FDUTPA suggests that the legislature intended to confer a non-waivable right to class representation"); Johnson v. W. Suburban Bank, 225 F.3d 366, 369 (3d Cir.2000) ("[B]ecause we can discern no congressional intent to preclude the enforcement of arbitration clauses in either statute's text, legislative history, or purpose, we hold that such clauses are effective even though they may render class actions to pursue statutory claims under the TILA [Truth in Lending Act] or the EFTA [Electronic Funds Transfer Act] unavailable.").

VII.
FDUTPA provides for public and private enforcement alike. See generally Kristian, 446 F.3d at 59 (holding that "[w]hen Congress enacts a statute that provides for both private and administrative enforcement actions, Congress envisions a role for both types of enforcement" and that "[w]eakening one of those enforcement mechanisms seems inconsistent with the Congressional scheme"); but see Johnson, 225 F.3d at 375 (asserting that administrative enforcement mechanisms under the Truth in Lending Act, 15 U.S.C. § 1601 et seq., "bolstered" the conclusion that an arbitration provision preventing consumers from pursuing class relief was not incompatible with TILA).
FDUTPA permits the Office of the State Attorney or the Department of Legal Affairs to investigate claims of deceptive practices and to seek on behalf of consumers, among other things, actual damages and injunctive relief to prohibit such practices. See §§ 501.207 and 501.203(2), Fla. Stat. (2005). In addition, the Department of Legal Affairs has the authority to issue a cease and desist order to prevent future violations of the act. See § 501.208, Fla. Stat. (2005). These procedures concededly contemplate relief for more than one individual consumer at a time. See Fonte, 903 So.2d at 1025 (enforcing arbitration clause's bar on class representation in non-section 501.976 context in part because public enforcement authority FDUTPA provides "presents an added deterrent effect *610 to violators if private enforcement actions should fail to fulfill that role" and "gives another possible avenue of recovery for consumers").
But public enforcement resources are necessarily limited. Reflecting this realityand against the backdrop of class action availabilitythe Act created a private cause of action for consumers aggrieved by FDUTPA violations. See § 501.211(1),(2), Fla. Stat. (2005). Given the restrictions on individual attorney's fee awards under section 501.976, to preclude class treatment of consumers' claims would distort the statutory scheme, undermine FDUTPA's private enforcement mechanisms and often make relief the statute contemplates unavailable, as a practical matter. In enacting FDUTPA, the Legislature was necessarily aware of class actions' role in deterring future FDUTPA violations by effectively redressing past violations, see Am. Online, Inc., 870 So.2d at 171-72; Davis, 776 So.2d at 975, a role that has special importance when section 501.976's restrictions on attorney's fees apply. We hold that, regardless of forum, FDUTPA plaintiffs may not be precluded from seeking class relief under section 501.976, Florida Statutes (2005).

VIII.
In doing so, we join numerous other courts in declining to enforce bans on class relief in consumer contracts that give rise to claims under consumer protection statutes. See, e.g., Muhammad v. County Bank of Rehoboth Beach, 189 N.J. 1, 912 A.2d 88, 101 (2006) ("The public interest at stake in [the plaintiff's] ability and the ability of her fellow consumers effectively to pursue their statutory rights under this State's consumer protection laws overrides the defendants' right to seek enforcement of the class-arbitration bar in their agreement."); Eagle v. Fred Martin Motor Co., 157 Ohio App.3d 150, 809 N.E.2d 1161, 1180 (2004) (finding arbitration provision precluding consumer's ability to seek class relief or act as private attorney general unenforceable as contrary to public policy underlying Ohio's Consumer Sales Practices Act); Thibodeau v. Comcast Corp., 912 A.2d 874, 885-86 (Pa.Super.Ct.2006) (finding arbitration provision's preclusion of class relief impermissible under Pennsylvania law and approving trial court holding that "[i]t is only the class action vehicle which makes small consumer litigation possible" and "[s]hould the law require consumers to litigate or arbitrate individually, defendant corporations are effectively immunized from redress of grievances"); Scott, 161 P.3d at 1006 ("[W]e conclude the class action waiver clause before us is an unconscionable violation of [Washington's] policy to protect the public and foster fair and honest competition . . . because it drastically forestalls attempts to vindicate consumer rights."); Coady v. Cross County Bank, 299 Wis.2d 420, 729 N.W.2d 732, 746-47 (2007) (holding arbitration clause prohibiting plaintiffs alleging violations of Wisconsin Consumer Act from proceeding on class-wide or representative basis unconscionable).[16]

*611 IX.
In sum, we conclude that the contractual provisions at issue here which purport to prohibit consumers from pursuing class relief for small but numerous claims against motor vehicle dealers based upon alleged violations of section 501.976, Florida Statutes (2005), are irreconcilably at odds with the remedial purposes of FDUTPA, contrary to the public policy of this state, and unenforceable for that reason.
Affirmed.
BARFIELD and WOLF, JJ., concur.
NOTES
[1] Two orders were entered in separate cases involving substantially identical operative facts. Each order was appealed and the appeals have been consolidated. To the extent either order denied a motion to dismiss on grounds that have nothing to do with arbitration, we lack jurisdiction. See Fla. R.App. P. 9.130(a)(3)(C) (2007). An order denying a motion to dismiss is not appealable as such until after final judgment, even when the motion to dismiss is appealed in conjunction with an appealable non-final order. Chicago Title Ins. Agency v. Chicago Title Ins. Co., 560 So.2d 296, 297 (Fla. 2d DCA 1990) (citations omitted). Accord Roofcraft Int'l, Inc. v. Thomas, 677 So.2d 39, 39-40 (Fla. 4th DCA 1996); King v. Odle, 665 So.2d 378, 378 (Fla. 4th DCA 1996); First Union Nat'l Bank v. Peoples Nat'l Bank of Commerce, 644 So.2d 538, 539 (Fla. 3d DCA 1994); Polo v. Polo, 643 So.2d 55, 56 (Fla. 3d DCA 1994); George J. Karr, D.D.S. v. Sellers, 620 So.2d 1104, 1105 (Fla. 4th DCA 1993); Ronbeck Constr. Co. v. Savanna Club Corp., 592 So.2d 344, 348 (Fla. 4th DCA 1992); Bd. of Med. Exam'rs v. Kadivar, 482 So.2d 501, 502 (Fla. 4th DCA 1986); Capitol Fidelity Life Ins. Co. v. State Dep't of Ins., 478 So.2d 1105, 1106 (Fla. 1st DCA 1985); Perimeter Invs., Inc. v. Amerifirst Dev. Co., 423 So.2d 586, 587 (Fla. 1st DCA 1982).
[2] Those who suffer loss as a result of a violation of the Act may recover actual damages, attorney's fees, and court costs. See § 501.211(2), Fla. Stat. (2005). In awarding attorney's fees to FDUTPA plaintiffs who prevail under Section 501.976, Florida Statutes (2005), courts must take into account "the amount of actual damages in relation to the time spent." § 501.976, Fla. Stat. (2005).
[3] The appellees later amended their requests for class certification to limit the class to all persons who were charged the fee in purchasing or leasing automobiles from Brumos and S.D.S. on or after August 18, 2001.
[4] All plaintiffs named at that time had purchased rather than leased vehicles from the appellants. The appellants do not allege that the contracts of any customers purchasing vehicles from the appellants contain arbitration clauses.
[5] In effect, at the hearing on the motions to dismiss, the parties stipulated that the arbitration question was ripe for decision, whatever the sequence in which the trial court ruled on pending motions. The trial court granted the appellees' motions for leave to amend, moreover, before the appellants filed the notices of appeal seeking review of the denial of the motions to dismiss refusing to order arbitration.
[6] We denied the appellants' motion to stay proceedings in the trial court pending resolution of their appeal of the non-final orders denying their motions to dismiss. Later Brumos and S.D.S. appealed the orders granting class certification separately. Those appeals have been consolidated with one another, see case numbers 1D06-5662 and 1D06-5664, but not with the present appeals.
[7] Until the trial court certified the class, just those persons actually named in the complaints were parties, and only their leases were pertinent, although the record contains other leases. See Policastro v. Stelk, 780 So.2d 989, 991 (Fla. 5th DCA 2001) (noting that "[a] civil action does not become a `class action' simply because the complaint bears the legend `class action complaint'").
[8] The Lexus 2 agreement provides that "if the provision prohibiting classwide arbitration is deemed invalid, then this entire Arbitration Provision shall be null and void." The Brumos 2 agreement provides, in contrast, for the severability of any provision of the arbitration clause found unenforceable or invalid, and directs that the remaining provisions be "given full effect as if the severed provision had not been included." On appeal for the first time, the appellants argue that, even if the class action waivers were properly invalidated, the trial court erred by invalidating the entire Brumos 2 arbitration clause, rather than compelling arbitration pursuant to the remaining provisions of the clause. But Brumos never made this argument below. The argument is unavailable to it on appeal, because Brumos failed to raise it in the trial court. See Steinhorst v. State, 412 So.2d 332, 338 (Fla. 1982) ("[I]n order for an argument to be cognizable on appeal, it must be the specific contention asserted as legal ground for the objection, exception, or motion below.").
[9] We do not reach the trial court's alternative reasons for invalidating the arbitration provisions.
[10] The Lexus 2 agreement provides that "[t]his Arbitration Provision is made pursuant to a transaction involving interstate commerce, and shall be governed by the FAA." The Brumos 2 agreement provides that "[t]his Lease evidences a transaction involving interstate commerce" and that "[a]ny arbitration under this Lease shall be governed by the Federal Arbitration Act (9 U.S.C. 1, et seq.)."
[11] Section 501.2105, Florida Statutes (2005), provides, in relevant part, that "[i]n any civil litigation resulting from an act or practice involving a violation of this part, . . . the prevailing party . . . may receive his or her reasonable attorney's fees and costs from the nonprevailing party." § 501.2105(1), Fla. Stat. (2005).
[12] See Jenkins v. First Am. Cash Advance, LLC, 400 F.3d 868, 877-78 (11th Cir.2005) (holding arbitration provisions precluding class action relief enforceable in putative class action alleging violations of state usury statutes and the Georgia Racketeer Influenced and Corrupt Organizations Act); Johnson v. W. Suburban Bank, 225 F.3d 366, 369 (3d Cir.2000) (holding class relief under the Truth in Lending Act and the Electronic Fund Transfer Act precluded by provisions of arbitration clause); Edelist v. MBNA Am. Bank, 790 A.2d 1249, 1261 (Del.Super.Ct.2001) (finding bar on class action claims in arbitration agreement enforceable because "[t]he surrender of that class action right was clearly articulated in the arbitration amendment"); AutoNation USA Corp. v. Leroy, 105 S.W.3d 190, 199-200 (Tex.App.2003) (holding arbitration clause "prohibiting class treatment of small-damage consumer claims" not substantively unconscionable but acknowledging that "there may be circumstances in which a prohibition on class treatment may rise to the level of fundamental unfairness").
[13] The trial court in Powertel, 743 So.2d at 576-77, a consumer class action against a cellular telephone provider, seeking damages for, among other things, Powertel's alleged violation of FDUTPA, id. at 572, denied Powertel's motion to compel arbitration. We affirmed on two alternative grounds: (1) the arbitration provision was unconscionable; and (2) the clause could not be applied retroactively to a customer's pending lawsuit. Id. at 577.
[14] The Powertel court did not invalidate the arbitration clause solely because the clause defeated the remedial purpose of FDUTPA, but relied in part on the clause's preclusion of class remedies in finding the contract substantively unconscionable. See Powertel, Inc. v. Bexley, 743 So.2d 570, 576-77 (Fla. 1st DCA 1999). In the present case, however, where attorney's fees are limited by section 501.976, Florida Statutes (2005), we conclude that the arbitration provisions' preclusion of class relief violates the public policy of the state. See Blankfeld v. Richmond Health Care, Inc., 902 So.2d 296, 299 (Fla. 4th DCA 2005) (noting distinction between finding a contractual provision unenforceable on the ground of its unconscionability and invalidating a provision because it defeats the remedial purpose of a statute).
[15] In finding these two arbitration clauses' preclusion of class relief unenforceable, we do not suggest that no FDUTPA claim is arbitrable. To the contrary, Florida courts have repeatedly held some FDUTPA claims subject to arbitration. See Five Points Health Care, Ltd. v. Alberts, 867 So.2d 520, 522 (Fla. 1st DCA 2004); Murphy v. Courtesy Ford, L.L.C., 944 So.2d 1131, 1133 (Fla. 3d DCA 2006); Orkin Exterminating Co. v. Petsch, 872 So.2d 259, 261-62 (Fla. 2d DCA 2004); Stewart Agency, Inc. v. Robinson, 855 So.2d 726, 728 (Fla. 4th DCA 2003); Aztec Med. Servs., Inc. v. Burger, 792 So.2d 617, 624 (Fla. 4th DCA 2001); Value Car Sales, Inc. v. Bouton, 608 So.2d 860, 861 (Fla. 5th DCA 1992). We have held that FDUTPA claims may be subject to arbitration, while acknowledging that such claims do not "exist solely for the benefit of the parties to the contract." Alberts, 867 So.2d at 522 (quoting Mgmt. Computer Controls, Inc. v. Charles Perry Constr., Inc., 743 So.2d 627, 632 (Fla. 1st DCA 1999)). See also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 27, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (finding agreement to arbitrate age discrimination claim under Age Discrimination in Employment Act (ADEA) enforceable notwithstanding fact that "the ADEA is designed not only to address individual grievances, but also to further important social policies").
[16] See also Dale v. Comcast Corp., 498 F.3d 1216, 1224 (11th Cir.2007) (concluding arbitration clause precluding class relief substantively unconscionable and determining that "the enforceability of a particular class action waiver in an arbitration agreement must be determined on a case-by-case basis, considering the totality of the facts and circumstances"); Shroyer v. New Cingular Wireless Servs., Inc., 498 F.3d 976, 986 (9th Cir.2007) (holding class arbitration waiver unconscionable under California law); Kristian v. Comcast Corp., 446 F.3d 25, 29 (1st Cir.2006) (concluding that "the provisions of the arbitration agreements barring . . . class arbitration are invalid because they prevent the vindication of statutory rights under state and federal law"); Ting v. AT & T, 319 F.3d 1126, 1150 (9th Cir.2003) (finding class action ban in consumer contract substantively unconscionable); Leonard v. Terminix Int'l Co., 854 So.2d 529 (Ala.2002) (finding arbitration clause precluding class relief unconscionable); Discover Bank v. Super. Ct., 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100, 1110 (2005) (holding waiver of class arbitration "in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages" unconscionable and therefore unenforceable); Kinkel v. Cingular Wireless LLC, 223 Ill.2d 1, 306 Ill.Dec. 157, 857 N.E.2d 250, 274-75 (2006) (holding class action waiver in arbitration clause substantively unconscionable as applied to consumers alleging violations of Illinois' Consumer Fraud and Deceptive Business Practices Act, but noting that enforceability of waiver must be determined on case-by-case basis in light of the totality of the circumstances); State ex rel. Dunlap v. Berger, 211 W.Va. 549, 567 S.E.2d 265, 279-80 (2002) (finding class action waiver in arbitration clause in contract of adhesion unconscionable, stating, "if an arbitral forum substantially denies . . . rights and remedies . . . provided by laws designed to protect . . . the public, the FAA does not . . . require that those rights be surrendered").